(November 18, 1916.)

# FRED VEATCH, Plaintiff, v. J. G. GIBSON, Mayor, et al., Defendants.

## [160 Pac. 1112.]

PROHIBITION—MAYOR AND CITY COUNCIL—ORDINANCE—SEWERAGE DIS-
POSAL PLANT—CONSTRUCTION OF NEW PLANT—OLD PLANT—CITY
ENJOINED FROM USING—ASSESSMENT OF BENEFITS—WHAT PROP-
ERTY LIABLE TO—STATUTORY CONSTRUCTION—DESCRIPTION OF PROP-
ERTY—SUFFICIENCY OF SEWER COMMITTEE—METHOD OF PROCEDURE.

1. Where it becomes necessary to construct a new system of
sewerage disposal works, the provisions of subd. 4 of sec. 2353, Rev.
Codes, as amended by Laws of 1911, p. 256, do not apply, as said
provisions were not intended to apply to the construction of a new
sewerage disposal plant, as it provides only for repairing and main-
taining an existing plant.

2. It is declared by Ordinance No. 429 to be the intention of the
city to construct an entirely new sewerage disposal plant, and said
ordinance creates a sewerage district bounded by the corporate lim-
its of said city for that purpose, and it is proposed to assess the real
property within such district to pay the cost and expense of such
new plant according to the benefits received by each tract, as pro-
vided by subd. 3 of said sec. 2353.

3. After such assessments are made, the property owner is given
opportunity to be heard in regard to the matter, and the decision
of the city council upon such hearing is subject to appeal.

4. The assessing board is the proper tribunal to first determine
what property is assessable so far as benefits are concerned, subject
to protest to the council, and the right to appeal is given from the
decision of the council to the courts.

5. *Held,* that the ordinance of intention is sufficiently specific as
to the boundaries of said sewerage district.

6. The ordinance ordering the improvements to be made and the
assessment of lots and tracts of land within such district to be as-
sessed must be described by the proper subdivisions.

7. *Held,* under the provisions of sec. 2238, Rev. Codes, as amended
by Laws of 1915, p. 221, that general authority is given to cities
and villages to construct sewers as well as other improvements, and
with that power is included the power to construct all of the neces-
sary and incidental works for a complete sewerage system, including
sufficient outlets and disposal works of proper capacity to make such
system effective and complete.

8. *Held,* that there are two methods provided by statute for the construction of a sewer system, one under the provisions of chap. 14 of the Political Code, commencing with sec. 2342, and the other under the provisions of sec. 2238, Rev. Codes, as amended by Sess. Laws 1915, p. 221, and the city may follow either of said procedures in the construction of a sewerage system; and if the procedure first mentioned is adopted, a sewer committee must be appointed; if the latter is followed, a sewer committee need not be appointed, and a writ would not issue to prohibit the city from adopting either method of procedure.

9. *Held,* that if the city mayor and council desire, they may legally proceed in the construction of a sewer system without the appointment of a sewer committee.

[As to cases in which the writ of prohibition lies, see notes in **12 Am. Dec. 604; 18 Am. Dec. 238; 111 Am. St. 929.**]

Original application for a writ of prohibition to the mayor and city council of the city of Moscow to prohibit them from proceeding to construct a new sewerage disposal plant. Alternative writ quashed and peremptory writ denied.

G. G. Pickett, for Petitioner.

"If the assessment exceeds the benefits there is *pro tanto* a taking of property without compensation." (28 Cyc. 1104; 8 Cyc. 1062.)

An assessment in excess of benefits cannot be enforced. (28 Cyc. 1156, and cases cited.)

Orland & Lee, for Defendants.

The requirement made of the city to repair does not mean to rebuild (7 ·Words and Phrases, 6098), and the word "maintain" as used in the statute does not mean to rebuild. or reconstruct. (5 Words and Phrases, 4281; *Louisville, N. A. & C. Ry. Co. v. Godman,* 104 Ind. 490, 4 N. E. 164; 24 Am. & Eng. Ency. of Law, 470; *Barber Asphalt Pav. Co. v. Hezel,* 155 Mo. 391, 56 S. W. 449, 48 L. R. A. 288.)

The words "repair" and "maintain" as used in this statute relate only to the keeping of the sewer and disposal works, in as good condition as may be, but not to the enlarging or

rebuilding of the sewer system of the disposal works. (*Crane v. West Chicago Park Commrs.*, 153 Ill. 348, 38 N. E. 943, 26 L. R. A. 311; *Santa Cruz R. P. Co. v. Broderick*, 113 Cal. 628, 45 Pac. 863; *Robertson v. Omaha*, 55 Neb. 718, 76 N. W. 443, 44 L. R. A. 534; 4 Dillon, Municipal Corporations, 5th ed., sec. 1447.)

There is no limit placed upon councils of cities as to what portion of a city shall be declared a sewer district. (*McGilvery v. City of Lewiston*, 13 Ida. 338, 350, 90 Pac. 348, and cases cited; *Blackwell v. Coeur d'Alene*, 13 Ida. 359, 90 Pac. 353; *Beckett v. City of Portland*, 53 Or. 169, 99 Pac. 659; *Rich v. Chicago*, 152 Ill. 18, 38 N. E. 258.)

The boundary lines given in this ordinance are the boundary lines of the municipal corporation of the city of Moscow; anyone having property within the corporate limits of the city knows that it will be subject to the proposed assessment. It is much more comprehensive than a boundary by streets and alleys and lines drawn through lots and blocks by feet and inches. (*Oregon Short Line R. R. Co. v. Pioneer Irr. Dist.*, 16 Ida. 579, 102 Pac. 904.)

Where a power of authority is given to a municipality, it carries with it by implication, the doing of all things necessary to make it effective and complete, and also a discretion as to the manner in which the power shall be carried out, if not specially provided. (1 Dillon, Mun. Corp., 5th ed., secs. 242, 243.)

SULLIVAN, C. J.—This is an original application to this court for a writ of prohibition to the mayor and city council of the city of Moscow to prohibit them from further proceedings under an ordinance of intention, No. 429, of said city, for the erection and construction of proposed sewerage disposal works.

It appears from the application for the writ that the city of Moscow in 1904 constructed a trunk line sewerage system and at the same time lateral sewers. The trunk line system was established and the city of Moscow was constituted a single trunk line district. The trunk line system included

sewerage disposal works, usually called a septic disposal plant; for the expense of said trunk line system and disposal plant the entire lots and land contained within said city were assessed. During the succeeding twelve years other lateral sewerage districts have been formed and others will no doubt be formed, all of which connect with the original trunk line and empty into said disposal works. Since the establishment of said system and works, the number of inhabitants tributary to the same has largely increased, until the present works are inadequate for the proper disposal of the sewerage; also the disposal plant was constructed of wood and has become decayed and unfit for the purpose intended, and by reason thereof has become dangerous to the health and welfare of the citizens.

Application was made to, and an injunction granted by, the district court of Latah county, which injunction takes effect January 1st, 1917, prohibiting the flow of said sewerage from the said disposal works in its present condition into a small creek, that being the only drain tributary to said city.

With those conditions confronting the city, Ordinance No. 429 was passed, which ordinance recites the inadequacy of the present sewerage works of the city and recites the intention of the mayor and city council to construct a general sewerage disposal works "on account of the sewerage disposal works of the city of Moscow not properly liquefying and purifying the sewerage, and thereby creating noxious gases and offensive odors; and on account of the city of Moscow having been enjoined from creating a nuisance by and on account of the defective working of the present sewerage disposal works of the city of Moscow." The ordinance declares the intention of the city to construct the proper disposal works and connect same with the general sewer line system now existing in said city, and defines the general character of said disposal works and the boundaries of the proposed sewerage district, which includes said entire city, and gives the estimated cost and expense of the construction of said works and provides for the proper notice required by law to be given, and declares that the cost and

expense incurred in the construction of such works shall be and become a lien upon all the lots, tracts and parcels of land connected with the general sewerage system of the city of Moscow, and fixes a time in which protest or protests may be made against the proposed construction, and declares: "Whereas, the public interest, convenience and health, requires that such Sewerage Disposal Works be built, connecting with the present sewer system of the City of Moscow, and all extensions which may hereafter be made, for the purpose of purifying such sewerage, and preventing the same to be and become noxious and offensive, and being or becoming a nuisance, now, therefore" (here follows the details of the ordinance which it is not necessary to quote).

Sec. 11 of said ordinance is as follows:

"That for the purpose of carrying the provisions of this ordinance into effect, the Mayor of the City of Moscow shall appoint three substantial taxpayers and *bona fide* residents of the City of Moscow, who shall be styled collectively the 'Sewer Committee,' and shall have all such powers as provided by the laws of the State of Idaho, and shall receive such compensation as shall be fixed by the Council of the City of Moscow."

Counsel for the plaintiff states that the object of this proceeding is to have the questions determined whether the city has the right to proceed to erect and construct an additional or new septic tank or sewerage disposal works for the use of said city, and to extend, if necessary, the present sewerage trunk line system from the present septic tank system to the proposed new sewerage disposal works, and whether the proper procedure has been followed in this case by the city, and whether or not the subsequent proposed procedure, as indicated by the provisions of said ordinance, is in accordance with the laws of the state; and whether the assessments proposed to be levied for the purpose of paying the cost and expense of the proposed works will be legal, and whether if bonds are issued in pursuance of such assessment on account of delinquencies they will be a valid and

subsisting lien upon all of the property included within the proposed district.

It is conceded that the present sewerage disposal works of said city are insufficient in size and capacity to properly dispose of the sewerage from said city, and that the city has been enjoined from further using said works. The question then is directly presented whether under our laws, after the property of the city has once been assessed for a sewerage system or disposal works, can the same property be again assessed for the purpose of building a new system or new sewerage disposal works.

Subd. 4 of sec. 2353, Rev. Codes, as amended by the Laws of 1911, p. 256, provides as follows:

"The expense of repairing and maintaining such sewerage system or sewerage disposal works, when completed, shall be paid or borne by the city or village."

That provision of the statute was not intended to apply to the construction of new disposal works. It provides for the "repairing and maintaining" of the existing works; but where entirely new disposal works are made necessary on account of the wearing out or inadequacy of the existing works, and the city being enjoined from using such works, and on account of the growth of the city and from other causes which may render the repairing and maintaining of such works inadequate for the needs of the city, the provisions of said section do not apply.

It certainly will not be contended that after an improvement district, including all the real estate in a city, has once built such works that the city must at all hazards keep them in repair and maintain them, regardless of their decay or inadequacy on account of the increase of population of the city, or for any other valid reason, and cannot construct other disposal works at the expense of the property within such city by the levy of special assessments.

It is conceded that said disposal works, at its present location, could not be repaired so as to meet the demands of the people of the city. The terms "repairing" and "maintaining," as used in said section, mean not to make a new thing,

but to refit, to make good or restore an existing thing. Those terms do not include the construction of a new plant in a different location. By said ordinance it is declared that it is the intention of the city to construct an entirely new disposal plant; also that the entire city shall consist of one district for that purpose, and it is proposed to assess the real property within such proposed district to pay the cost and expense of such new plant.

Under the facts of this case and the law, the city has the authority to construct the proposed works and to assess the real property within the proposed district to pay the cost and expense of such construction.

It is contended by the plaintiff that by the ordinance of intention, all of the lots and tracts of land within the corporate limits of the city are not benefited by said sewer system, for the reason that they are either not attached or cannot attach to the sewer system without great expense, and that there may be lots and tracts of land which cannot, on account of their elevation, use the sewer at all.

It may be true that the plaintiff will not be able to connect his land with the sewer without considerable expense and that such expense may be prohibitory. However, the question of benefits to each parcel of land is to be determined by the assessing board, and if the lots of plaintiff will not be benefited in any way, the assessing board would certainly take that fact into consideration in making assessments.

In subd. 3 of sec. 2353, Rev. Codes, as amended by Laws of 1911, p. 256, the following language is used: "That the costs of the same are to be assessed against all of the property included within such sewerage district." This, of course, contemplates that such assessments shall be made in accordance with the benefits received by each tract of land.

As bearing upon the question, see *McGilvery v. City of Lewiston*, 13 Ida. 338 (350), 90 Pac. 348, and cases there cited; *Blackwell v. Village of Coeur d'Alene*, 13 Ida. 357, 90 Pac. 353; *Beckett v. City of Portland*, 53 Or. 169, 99 Pac. 659; *Rich v. City of Chicago*, 152 Ill. 18, 38 N. E. 255.

Of course, if lots within said sewerage district receive no benefit whatever, they ought not to be assessed for benefits.

Under the provisions of subds. 5 and 7 of said section 2353, provision is made for notice to property owners, and they are given opportunity to file objections to any assessments made or any portion thereof, and the city council should hear such objections and grant or overrule them in accordance with the facts shown at the hearing, and the decision of the council in such matters is subject to appeal. Upon such hearing, if the city council should conclude that certain tracts of land receive no benefit whatever and are not subject to assessment, or if an error was made by the council in that matter and its decision was reversed on appeal, it would affect only the assessment upon the particular lot involved, and would not affect the assessment upon the balance of the land. The assessing board is the proper tribunal to determine what property is assessable in this case, subject to a protest to the council, and with the right to appeal from the decision of the council to the courts.

As touching upon this question, see 1 Abbott on Municipal Corps., p. 834.

Plaintiff also contends that the ordinance of intention to construct such sewerage disposal works is not specific in its boundaries, and insists that the ordinance should describe each and every tract of land to be assessed. There is nothing in this contention, since subd. 3 of said section 2353, as amended (p. 257), contains, among others, the following provisions: "And stating in such resolution or ordinance the specific boundaries of the proposed sewerage district, which boundary lines shall be plainly, and distinctly stated so that it may be plainly determined therefrom what property or properties are to be included in said proposed district." The boundary lines given in said ordinance are the boundary lines of the city of Moscow, and are sufficient.

In the ordinance ordering improvements made and the assessment, lots and tracts of land to be assessed must be described by their subdivisions and present ownership, but this is not required in the ordinance of intention. (See

*Oregon Short Line R. R. Co. v. Pioneer Irr. Dist.,* 16 Ida. 578, 102 Pac. 904.)

Plaintiff raises the question as to whether the mayor and council of a city, organized under the general laws of the state, can construct sewers or sewerage disposal works without a committee, as provided for by sec. 2353, *supra.*

Under the act of 1915, amending sec. 2238, Rev. Codes, Sess. Laws, p. 221, general authority is given to cities and villages of the state to construct sewers as well as other public improvements. With that power is included the power to construct all of the necessary and incidental works for a complete sewerage system, including sufficient outlets and disposal works of capacity sufficient for carrying the sewage. It was clearly the intention of the legislature to grant to cities and villages the power to construct a complete sewerage system. The power to construct sewers is general, and where power or authority is given to municipalities, it carries with it by implication the doing of those things necessary to make such system effective and complete; and also a discretion as to the manner in which the power is to be carried out, if not specifically provided. (1 Dillon on Municipal Corp., 5th ed., sec. 242.) Said act of 1915 provides for the construction of sewers and has no immediate connection with, and is independent of, the provisions of sec. 2353, *supra.*

There are thus two methods provided by statute for the construction of a sewerage system: One under the provisions of chap. 14 of the Political Code, commencing at sec. 2342, and the other under the provisions of sec. 2238, Rev. Codes, as amended by Sess. Laws 1915, p. 221, and the city may follow either of said procedures in the construction of a sewer system. If the former procedure is adopted, a sewer committee must be appointed; if the latter, a sewer committee need not be appointed, and a writ would not issue to prohibit the city from adopting either method of procedure.

It is conceded by respective counsel that it would be more expensive to the city to appoint a sewer committee than for the city officers to look after the matter themselves. If the city desires, it may legally proceed under the provisions

of sec. 2238, *supra*, in the construction of such sewer system, and thus avoid the appointment of a sewer committee.

We therefore hold that the city has the authority to construct said disposal works as proposed by said ordinance of intention, and that the proper procedure has been followed by the city, and the assessments proposed to be levied for the purpose of paying the cost and expense of the proposed works will be legal and valid, and that the bonds proposed to be issued in pursuance with such assessments will be a valid and subsisting lien upon the property assessed included within the proposed district.

The alternative writ heretofore issued is quashed and the peremptory writ denied. Costs awarded to the defendants.

Budge and Morgan, JJ., concur.