Argued and submitted May 26, affirmed December 15, 2010, petition for review denied April 7, 2011 (350 Or 230)

Randy Louis KIELING,
Personal Representative for
the Estate of Nancy Kieling;
David Mandel,
an individual;
and Marvin Mandel,
an individual,
*Petitioners-Appellants,*

*v.*

CITY COUNCIL,
Mayor of the City of Sherwood,
City of Sherwood,
and Sherwood School District,
*Respondents-Respondents.*

Washington County Circuit Court
C082674CV; A141177

245 P3d 162

John A. Rankin argued the cause for appellants. With him on the joint briefs was Dean C. Werst.

Christopher D. Crean argued the cause for respondents City Council, Mayor of the City of Sherwood, and City of Sherwood. Bruce L. Campbell argued the cause for respondent Sherwood School District. With them on the joint brief were Kelly S. Hossaini, Bruce L. Campbell, Miller Nash LLP, Heather R. Martin, and Beery Elsner Hammond LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

In order to provide access to two new schools, the Sherwood School District needed to build a new public street. Because the street would benefit not only the new schools but also other abutting properties—including property owned by plaintiffs—the school district asked the City of Sherwood to invoke its power to create a "reimbursement district" and thereby require the nearby property owners to share in the cost. The city passed a resolution doing so and leveling a conditional reimbursement fee of $440,268 on plaintiffs—conditional, because the fee becomes due only in the event that plaintiffs' properties are developed before 2018. Plaintiffs petitioned for a writ of review, arguing that the amount of the fee was not supported by substantial evidence and that imposing the fee amounted to a taking of their property for which they were entitled to compensation. The circuit court allowed the writ and, after a hearing, affirmed the city's resolution. Plaintiffs appeal, and we affirm.

A "reimbursement district" is one of the mechanisms that local governments use in order to fund public improvements. Chapter 13.24 of the Sherwood Municipal Code (SMC) establishes the city's procedure for creating such a district. A property owner who plans to build a project that includes a "public improvement," including a street, that will serve not only the owner's property, but others' as well, may submit an application asking the city to form a reimbursement district consisting of the owner's property and the other benefitted properties. SMC 13.24.010; SMC 13.24.020. The city's director of public works then reviews the application and prepares a report for the city council. The report must include the estimated cost of the proposed public improvements; which other properties the improvements will benefit; the proportion of the improvements' costs for which the developer should be reimbursed; and a "methodology for spreading the cost among the properties * * * that is just and reasonable." SMC 13.24.030. The report also must include a schedule showing fees that would be charged against each benefitted property for each improvement. SMC 13.24.040 A. A property owner has to pay these fees, however, only if the property is developed within 10 years of the reimbursement district's creation. SMC 13.24.100.

After the city receives the report, it must notify all the potential members of the proposed reimbursement district—that is, property owners who are potentially liable for fees—of an "informational public hearing" where any person may comment on the proposed district. SMC 13.24.050. After the hearing, the city may approve, reject, or modify the recommendation and, if approved or modified, adopt a resolution effecting it. SMC 13.24.060 A. The resolution may be contested by writ of review. SMC 13.24.090.

In the present case, the property developer is the Sherwood School District. It applied for creation of a reimbursement district and submitted information to the Sherwood director of public works. After reviewing the application, the director recommended that the city council form the reimbursement district to help the school district offset the cost of water, sewer, and roadway improvements. For the water and sewer improvements, the director recommended that reimbursement fees be calculated according to a methodology based on both square footage and frontage, while road improvement reimbursement fees would be calculated according to frontage only—the generally accepted method. The recommendation estimated that the cost of improving the road—the only improvement that is the subject of this appeal—was, in total, $2,186,296, of which $670,932 was apportioned to benefitted properties. An appendix to the recommendation apportioned the fees to be assigned to each of the benefitted properties, and indicated that plaintiffs' share, based on frontage, would be $440,268. The city held a hearing on the recommendation and subsequently approved the director's recommendations, despite testimony against adoption by, among others, an attorney representing one of the plaintiffs. Plaintiffs then petitioned for a writ of review, arguing that the city's resolution was not supported by substantial evidence and that it violated the just compensation clauses of the United States and Oregon constitutions.[1] The court affirmed the city's resolution creating the reimbursement district, and this appeal ensued.

---

[1] Article I, section 18, of the Oregon Constitution provides, "Private property shall not be taken for public use * * * without just compensation." The Fifth Amendment to the United States Constitution provides, "[N]or shall private property be taken for public use, without just compensation."

At the outset of our discussion, it is helpful to emphasize what is and is not contested. First, plaintiffs expressly disavow any challenge to SMC chapter 13.24 *per se,* either substantive or procedural—that is, they do not contend that the chapter was improperly adopted, that it does not afford adequate procedural safeguards, or that it facially violates some constitutional guarantee.[2] Put another way, they challenge the city's exercise of a quasi-judicial function and not its exercise of a quasi-legislative function. Second, they do not challenge the city's decision to apportion the reimbursement fee for the road improvements according to the frontage method. Third, they do not challenge the city's finding that the cost of the road improvement is $2,186,296. And fourth, they do not challenge the city's mathematical calculation, that is, the finding that application of the frontage method results in a fee of $440,268. Plaintiffs' only arguments on appeal are two: First, they argue that SMC 13.24.030 A requires a fee that is "just and reasonable," and there is no evidence that $440,268 meets those criteria. Indeed, plaintiffs argue that the fee is manifestly *un*just and *un*reasonable because it grossly exceeds the value that the road adds to their property. Second, they argue that a fee of $440,268 encumbers their property during the period between 2008 and 2018, thereby constituting a taking for which they are entitled to just compensation.

■■ On a petition for writ of review, the trial court must determine whether the city "[m]ade a finding or order not supported by substantial evidence." ORS 34.040(1)(c). In doing so, the court may consider only the record that was before the city. *Baker v. City of Woodburn,* 190 Or App 445, 450-51, 79 P3d 901 (2003), *rev den,* 336 Or 615 (2004). We, in turn, review the trial court's review for errors of law, *Johnson v. Civil Service Board,* 161 Or App 489, 498, 985 P2d 854, *adh'd to as modified on recons,* 162 Or App 527, 986 P2d 666 (1999), and, like the trial court, we consider only the record that was before the city, *Baker,* 190 Or App at 451. The trial

---

[2] In the "Conclusion" to their opening brief, plaintiffs state that the case should "be remanded to the city for a meaningful hearing at a meaningful time, the minimum requirements for due process. * * * That process should lead to a reduction of the reimbursement fee * * *." The brief, however, contains no argument regarding any alleged inadequacy in the hearing process other than its outcome.

court's conclusion that a city's order is or is not supported by substantial evidence is itself a legal conclusion. *Johnson*, 161 Or App at 498. Thus, in this case, we must determine whether the trial court committed legal error when it concluded that the city's resolution was supported by substantial evidence and when it concluded that the resolution was not unconstitutional.

Plaintiffs' argument regarding substantial evidence proceeds in four steps: (1) The $440,268 fee was imposed on a one-acre parcel. Plaintiffs' property, before the street improvement, consisted of an undivided parcel of approximately 24 acres. The street improvement runs through that parcel. To the east is what plaintiffs refer to as the "remnant," which is approximately one acre. To the west are the remaining approximately 22.5 acres. (The road itself occupies some acreage.) Plaintiffs summarize their argument as follows: "The city exercised its authority * * * to encumber the [plaintiffs'] one acre plus parcel of single family residential land with a ten-year-long reimbursement fee of $440,000 [*sic*]." (2) The fee must be "just and reasonable," based on the language of SMC 13 chapter 24. (3) To be "just and reasonable," a reimbursement fee must comply with the "law of special benefits," under which improvements must be reasonably apportioned to the benefits that the improvements add to the benefitted property. (4) $440,268 is grossly disproportionate to the benefits that the road confers on the remnant.

We find fault with at least three of those four steps.

*One parcel or two?* The trial court implicitly determined that the city considered plaintiffs' tract to consist of a single parcel; that was the issue that the parties focused on at trial and, although the court made no specific findings of fact, it resolved the case in such a way as to imply that it resolved this contested issue in defendants' favor. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (we presume that, absent express findings, the trial court implicitly found disputed issue of fact consistent with outcome). That one-parcel determination is supported by substantial evidence in the record before the city.

> "In reviewing for substantial evidence, the court is not permitted to substitute its judgment for that of the city or to

reweigh the evidence; it must simply decide whether the record contains substantial evidence to support the decision. * * * There is substantial evidence to support a finding when, viewing the record as a whole, a reasonable person could make the finding."

*Baker*, 190 Or App at 455-56. The maps submitted with the director's report assign names and numbers to various parcels; plaintiffs' parcels on both sides of the street carry the same name ("Mandel") and number (4). The table of properties and footage on those maps assigns a single value to "Mandel."[3] It is true that the table indicates that the Mandel parcel has 439 feet of frontage, and that number corresponds to the frontage of the remnant. According to plaintiffs, that fact indicates that the only portion of their property that is the subject of the reimbursement fee is the one-acre remnant.

That is not correct. The reason that the city used the 439-feet figure in calculating the fee is that the street itself is only a three-quarter improvement; in other words, the school district owns, and will improve at its expense, only the eastern three-quarters of the new street right-of-way; the western quarter remains the property of the city. Thus, the only place where the improvement actually abuts plaintiffs' property is where the eastern edge of the street meets the western edge of the remnant. On the other side of the street, there is a gap between the western edge of the street and the eastern edge of plaintiffs' property.

That understanding puts the $440,268 fee in a different perspective. Presuming, for example, that plaintiffs subdivide their property into one-acre lots, each lot would be burdened with a reimbursement fee of approximately $18,400. Plaintiffs do not argue that such a fee would be disproportionate to an increase in value.

---

[3] Plaintiffs point to tables and spreadsheets in the record that show separate entries for "Mandel" property and "Mandel Remnant" property. Those spreadsheets, however, are part of a report submitted by the school district to the director of public works. Only the director of public works' report is required to be submitted to the city council. The director's report notes, "The School District submitted a Reimbursement District Report with their application * * *. There are a few minor differences in this Public Works Directors report which are not reflected in the School District report due to better information that has come forth during the review of the School District Report." Plaintiffs' evidence, therefore, is superseded by defendants'.

■      *"Just and reasonable."* According to plaintiffs,

> "The city's reimbursement fee ordinance, SMC 13.24,
> Sec. 4, D, requires the city to find that the encumbered par-
> cel has received a 'special benefit' from the local improve-
> ment, here a suburban street, and further, that the
> assessed reimbursement fee is 'just and reasonable' in its
> amount: App-4."

The cited provision—"SMC 13.24, Sec. 4, D"—has nothing to
do with "just and reasonable" or "benefitted properties" (it
specifies that a reimbursement fee includes a proportional
share of the fee that the developer pays when it submits its
application), nor does that section appear at "App 4" of plain-
tiffs' brief. We presume that plaintiff intended to refer to
SMC 13.24, section 3 D,[4] which does appear at App 4 and
does contain the phrases "just and reasonable" and "specially
benefitted." That section requires the public work director's
report to contain:

> "[a] methodology for spreading the cost among the proper-
> ties within the reimbursement district * * *. City may use
> any methodology for apportioning costs on properties spe-
> cially benefitted that is just and reasonable."

As is evident, nothing in this section (or in any other part of
the ordinance) requires that the *amount* be just and reason-
able. The ordinance requires only that the *methodology* be
just and reasonable. That methodology, with respect to
apportioning the cost of street improvements, is the frontage
methodology, which plaintiffs expressly accept.

■      *The Law of Special Benefits.* Plaintiffs cite several
cases holding that, to be valid, an assessment for an improve-
ment must be reasonably apportioned to the benefit that the
improvement confers. *E.g.*, *Crocker v. City of Albany*, 241 Or
180, 186, 405 P2d 364 (1965) ("To have a valid assessment,
the expense of the improvements must be assessed only
against the lands benefited, and reasonably apportioned
according to such benefits."); *Beezley et al v. City of Astoria*,
126 Or 177, 183-84, 269 P 216 (1928). Defendants note that

---

[4] The SMC ordinance that was passed in 2001 has a slightly different number-
ing system from the ordinance as codified in SMC. SMC 13.24, section 3, D, as
enacted is the same as SMC 13.24.030 D as codified.

the cited cases all deal with *assessments*, and, as this court pointed out in *Baker*, a reimbursement fee is not the same as an assessment, and the difference is not "a mere technical distinction." 190 Or App at 452 n 3. A reimbursement ordinance "does not authorize the imposition of an assessment that becomes a lien on the property." *Id.* at 452. According to defendants, a reimbursement fee is analogous to a tax, and there is no legal principle that requires rough equivalence between a tax and the value of the thing taxed. We need not decide this dispute, however, because, as we discuss next, plaintiffs presented *no* evidence that the $440,268 is, in fact, disproportionate to the increase in market value that the street would confer on their property.

■■ *Disproportionality*. Plaintiffs argue that there is an unconscionable difference between the amount that the street adds to the fair market value of the property and the amount that they are charged for it, yet they present no evidence whatsoever of either amount. They attempt to paper over this evidentiary gap by contending that the city had the burden of justifying the fee and did not do so by providing substantial evidence. That assertion misplaces the burden. As the party challenging the city's determination, plaintiffs must demonstrate that the city's resolution is unsupported, and not vice versa. *See Gilbert v. City of Eugene,* 255 Or 289, 292, 465 P2d 880 (1970) ("[T]he city council's determination that property has been benefited by an improvement and the amount of the benefit is conclusive unless the court can say that the city council's action was palpably arbitrary and abusive. * * * [T]he burden of persuading the court is a heavy one."); *accord Stanley v. City of Salem,* 247 Or 60, 427 P2d 406 (1967); *Kerr v. Hallett,* 67 Or App 324, 677 P2d 1098, *rev den,* 297 Or 272 (1984). Further, even if the city had the initial burden, it was met. As we held in *Baker,* another case involving judicial review of a circuit court's decision in a writ of review case challenging a reimbursement district, "[t]he report of the city's public works director, adopted and incorporated in the resolution, is the city's evidence in support of the resolution. * * * [I]n the absence of evidence contradicting the director's recommendation, the city could reasonably rely on the director's report in support of its finding[.]" 190 Or App at 456. At no time did plaintiffs present any evidence to the

city council regarding the value of either the whole parcel or what plaintiffs refer to as the remnant, nor of the amount of value that the parcel would add, nor to the amount of discrepancy between fee and value.

We therefore reject plaintiffs' first assignment of error.

For many of the same reasons, we also reject their second, in which they argue that, contrary to the trial court's ruling, the city's resolution violates the takings clauses of the United States and Oregon constitutions. Plaintiffs' argument at trial and before this court is that imposition of the reimbursement fee substantially interferes with their ability to sell or develop the property, and is for that reason a "taking" for which they are entitled to compensation. As noted above, plaintiffs' argument is premised on the assumption that the city's resolution imposed a $440,268 fee on a parcel of approximately one acre. The trial court rejected that premise, and we have concluded that its ruling is supported by substantial evidence. The reimbursement fee, then, amounts to approximately $18,400 per acre. To prevail on their federal constitutional claim, plaintiffs had the burden of establishing that the fee is not a " 'fair approximation of the cost of benefits supplied.' " *United States v. Sperry Corp.*, 493 US 52, 60, 110 S Ct 387, 107 L Ed 2d 290 (1989), *quoting Massachusetts v. United States,* 435 US 444, 463 n 19, 98 S Ct 1153, 55 L Ed 2d 403 (1978). Regarding their claim under the state constitution, plaintiffs cite no authority, and we are aware of none, for the proposition that the government "takes" property for purposes of Article I, section 18, by exacting a disproportionate fee to compensate for benefits conferred—and if there were such authority, plaintiffs, again, present no evidence to indicate that the city has done so.

Affirmed.